Smith, Judge,
delivered the opinion of tbe court:
Appellant has appealed from a decision of the Board of Appeals which affirmed the examiner’s rejection of all of the claims (claims 1-8) of appellants’ application Serial No. 434,323, filed June 3, 1954, ¿entitled “Protective Reflective Film.” All the appealed claims were rejected on two grounds: (1) as unpatentable over the prior art and (2) on the ground of double patenting.
The references relied upon are:
Groten et al., 2,459,739, Jan. 18,1949.
Keithly 2,703,772, March 8,1955. (Filed Sept. 12,1952.)
Bosch (German) [720,980] Apr. 16, 1942 (page 2, lines 3-27).
tClauser, “Metal Coated Plasties Combine Advantages of Both Materials”, Materials and Methods, pages 79-82, June 1948.
Schneider, “Metallizing by High Vacuum Modem Plastics”, pages 135-140, April 1950.
Van Boskirlc, “The Future of Mylar”, Modern Plastics, pages 226-227, November 1952.
The claimed invention relates to a reflective film product for adhesive attachment to a surface and to a method of making this product. The film product is intended to give a brilliantly reflective appearance to the surface to which it is attached while effectively protecting the surface from weathering.
The product consists of the combination of an oriented transparent film of a polyester condensation product of terephthalic acid and ethylene glycol (hereinafter referred to by the trademark “Mylar”), a coating of metal such as almuinum applied on one surface of the film by vapor deposition, and a thin adhesive coating applied to the metal for bonding the film and its metal coating to solid surfaces. The adhesive consists of a blend of rubbery butadiene-acrylonitrile polymer, a heat-advancing phenol-formaldehyde resin compatible therewith, and various additional modifiers as desired. It is capable of retaining the film product on various surfaces against severe weathering and against vandalism.
Appellants’ specification describes, as an example, the following method of producing the product. The adhesive composition is first coated to a thickness of about 1¼ mils on polyethylene-coated Kraft paper, which constitutes a carrier web. A one mil thickness of Mylar film is separately vapor coated under vacuum with a minimum amount of aluminum required to produce a visibly opaque metallic layer. The exposed surface of the adhesive on the carrier web is then activated with a minimum application of methylethyl ketone, and is then pressed *841 against the metallized surface of the “Mylar” film under squeeze roll pressure. The carrier web is then readily stripped away, leaving the adhesive coating firmly bonded to the metallized film.
Appealed claims 1, 2, and 8 are directed to appellants’ film product made up of a highly oriented film which is a condensation product of terephthalic acid and ethylene glycol, having a vapor deposited metal coating thereon, in turn provided with a vandal-proof adhesive coating, for permanently bonding the film product to solid surfaces. Appealed claims 3, 4, and 7 recite articles to which the film products of claims 1, 2, and 8, respectively, are adhesively bonded. Appealed claim 6 calls for an article consisting of a film product as recited in claim 8, which is removably lightly bonded by means of the adhesive coating to a temporary carrier web. - Appealed claim 5 relates to the method of producing the film product of claims 1,2, and 8.
The rejection of the claims as unpatentable over the prior art is based on obviousness of the claimed invention and raises an issue which requires an interpretation of 35 U.S.C. 103.[1] More specifically, this rejection requires a determination of what time is meant in 35 U.S.C. 103 by its use of the phrase “at the time the invention was made.”
The Primary Examiner’s rejections on art, affirmed by the board, were that all the appealed claims are “unpatentable over” various combinations of references which we can only construe as a rejection for obviousness under 35 U.S.C. 103. These various rejections seem to be correctly summarized in appellants’ brief as follows:

Claims Combination of References

1, 3-8 Clauser article from “Materials and Methods”, June 1948 in view of Van Boskirk Nov. 1952 article from “Modern Plastics”.
, 2 Clauser article in view of Van Boskirk Nov. 1952 article, and further in view of Groton et al. 2,459,739 (granted 1/18/49).
1, 3-8 Schneider article from “Modern Plastics”, April 1950 in view of Van Boskirk Nov. 1952 article.
2 Schneider article in view of Van Boskirk Nov. 1952 article, and further in view of Groton et al.
1-8 Bosch (German) 720,879 (dated 4/16/42) in view of Van Boskirk Nov. 1952 article.
As can be seen from the above summary, the Van Boskirk article is relied upon as a secondary reference in each rejection.
Clauser and Schneider were relied upon for a teaching of a vapor deposited coating of metal on plastic film where it is desired to pro *842 duce a mirror or other specularly reflective surface. The substitution of the “Mylar” film of Van Boskirk for the plastic film of either basic reference was considered by the examiner and board to be obvious to one skilled in the art.
During the prosecution of the application, the examiner had withdrawn a rejection based on a patent to Prindle et al.[2] in view of an affidavit, showing completion of appellants’ invention prior to January 18, 1952, the filing date of the Prindle et al. patent. The examiner refused, however, to accept appellants’ position that Van Boskirk (published in Nevember, 1952) was not a valid reference because of the affidavit, and referred to Section 715 of the Manual of Patent Examining Procedure which points out that a “Rule 131 affidavit is of no avail when all of the references are more than a year earlier than applicants’ filing date”.
The claims stand rejected on a combination of at least two printed publications which combination always includes the Van Boskirk publication. The Van Boskirk publication is dated November 1952, at least ten months subsequent to the “prior to January 18, 1952” date which appellants successfully asserted as their date of invention in the affidavit which the Patent Office accepted “under the provisions of Rule 131” as sufficient to overcome the Prindle et al. reference and to authorize its withdrawal.
Van Boskirk, however, was published more than one year prior to appellants’ filing date but since it does not “describe” the claimed-invention, it is not a statutory bar under 35 U.S.C. 102(b).[3]
The position of the examiner, affirmed by the board, is, in effect, that the claims are properly rejected under 35 U.S.C. 103 if the claimed invention was obvious to one of ordinary skill in the art at the time the application was filed.
35 U.S.C. 103 was a new provision in the Patent Act of 1952.[4] Its purpose was to take the place of the case-law requirement of “invention” which developed during the preceding century.[5] The many cases in which the requirement of “invention” was stated had an underlying concept, namely, that the presence of “invention” was to be *843 determined, as of the time the invention was made. This concept is now expressed in 35 U.S.C. 103.[6]
As stated in In re Edward M. Rothermel and Russell B. Waddell, Jr., 47 CCPA 866, 276 F. 2d 393, 125 USPQ 328:
* * * 35 U.S.C. 103 is very specific in requiring that a rejection on the grounds the invention “would have been obvious” must be based on a comparison between the prior art and the ■ subject matter as a whole at the time the invention was made. [Emphasis added.]
See also In re Murray and Peterson, 46 CCPA 905, 268 F. 2d 226, 122 USPQ 364. The rules promulgated by the Commissioner of Patents[7] to give administrative effect to the Patent Act of 1952 do not appear to provide in express terms how an applicant, faced with a rejection for obviousness under 35 U.S.C. 103, is to establish “the time the invention was made.”
Appellants’ position is that having established by an affidavit, accepted by the Patent Office as sufficient under Rule 131 to antedate the Prindle et al. patent, that their date of invention is “prior to January 18, 1952,” they are at least entitled to rely upon this date as the date as of which the question of “obviousness” must be determined under 35 U.S.C. 103.
The solicitor urges that Rule 131 by its express terms prevents use of an affidavit where the date of the publication is more than one year prior to the filing date of the application. This provision, however, has reference to the statutory bar which arises out of 35 U.S.C. 102(b).[8] In the present case we do not have the question of a statutory time bar which arises under 35 U.S.C. 102(b) by reason of the failure of an applicant to file his application within one year of the date of the anticipatory publication. The question here is whether what is obvious to one of ordinary skill in an art is to be determined as of “the time when the invention was made,” as specified in 35 U.S.C. 103, or whether it is to be determined as of some later date when the application is filed.
We think both logic and reason require us to interpret the provisions of 35 U.S.C. 103 in accordance with the legal principles which preceded and are codified in it. The principles established before 1952 required that the time as of which the determination of “invention” was to be made was “the time the invention was made.” *844 They apply equally to the determination of obviousness under 35 U.S.C. 103.
In the absence of any rules established by the Commissioner as to how this time of invention is to be established by an applicant faced with a rejection under 35 U.S.C. 103, we accept as adequate the statement in the affidavit filed herein that the date when appellants’ invention was made is “prior to Jan. 18, 1952”. At that time, the Van Boskirk reference had not been published. It cannot, therefore, be considered as establishing obviousness of the claimed invention under 35 U.S.C. 103. Since all the rejections of the claims as “unpatentable over the art” require the Van Boskirk publication, we will not sustain these rejections.
The other ground of rejection is based on double patenting over claims 10 and 11 of the Keithly patent, owned by the assignee of the application at bar.
Claims 10 and 11 of Keithly, on which the double patenting rejection is here based, call for a flexible sheet material comprising:
(1) “a smooth-surfaced flexible carrier”;
(2) a thin, opaque, visibly continuous aluminum film, temporarily adhered to the smooth surface of said carrier; and
(3) a non-tacky heat-activatible adhesive.
The carrier to which the aluminum film is “temporarily adhered”, readily permits the “stripping” of the carrier from the metal film. As stated in the specification, it must be “completely and easily removed”.[9]
While, as contended by the board, “Mylar” is referred to by Keithly as being applicable as a carrier, Keithly admonishes that “parting layers, such as waxes” are to be used where the “metal adheres excessively to the unprotected carrier surface.”
Appellants assert they have produced by the present invention what is characterized as “a vandal-proof structure.” Their three-element combination has the several elements so bonded that, when applied to a metal surface and pressed into place, it was, as stated in the specification, after 24 hours at room temperatures, impossible to strip any significant area of the film from the metal, i.e., the installation was vandal-proof.
Claims 10 and 11 of Keithly are not directed to such structure, nor is it seen how appellants’ structure could be embraced by the Keithly claims. The error of the board appears to us to reside in considering *845 the temporary, flexible “carrier” of Keithly as being the same as appellants’ claimed transparent film element, which forms a permanent part of the claimed structure. The claims here on appeal, properly construed, define a different and patentably distinct invention from that claimed in Keithly claims 10 and 11, when the latter are thus interpreted.
Since we find appellants’ claimed invention to be patentably distinct from the invention to which claims 10 and 11 of Keithly patent No. 2,703,772 are directed, we reverse this ground of rejection.
For the foregoing reasons, the decision of the Board of Appeals is reversed.

 § 108. Conditions for patentability; non-obvious subject matter
A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that* the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary shill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

 No. 2.714,569, filed Jan. 18,1952, Issued Aug. 2,1955.

 35 U.S.C. 102(b) Is as follows :
A person shall be entitled to a patent unless — * * * the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States, or

 Commentary on the New Patent Act by P. J. Federico, 35 USCA, p. 20. See In re Buff et al., 45 CCPA 1037, 256 F. 2d 590, 118 USPQ 340.

 See e.g., Hotchkiss v. Greenwood, 52 U.S. 248 ; Krementz v. S. Cottle Co., 148 U.S. 556; Goodyear Co. v. Ray-O-Vac Co., 821 U.S. 275.

 “The language of section 103 seems to leave no doubt that the date an applicant made an invention is the point of reference regardless of the existence of the statutory one-year bars. Such bars must be considered alone and not as part of the general knowledge to be imputed to the ‘person having ordinary skill,’ if later than said date of invention.” (Virgil E. Woodcock, Dynamics of the Patent System, Central Book Co., Inc., N.Y., 1960, p. 309.)

 See 35 U.S.C. 6.

 See footnote 3, supra.

 Claim 1 of Keithly sums up the manufacture of the reflective fabrics to which the Keithly Invention is directed, and is as follows :
1. In the manufacture of a reflective fabric, the method comprising depositing a visibly continuous thin metal film on a smooth-surfaced flexible carrier, forming on the metallized surface a thin coating of a curable, highly flexible adhesive bonding composition, adhering the adhesive layer to the surface of a fabric base under pressure, curing the adhesive bonding composition to a solvent-resistant and heat-resistant state, and then stripping the carrier from the metal film. [Emphasis added.]